The next matter, number 25-1068, Sharon Radfar v. Joseph I. Covino, et al. At this time, would counsel for the appellant please introduce herself onto the record to begin. Good morning, honorable members of the panel. Elizabeth Clegg, representing the appellant. May it please the court. I think one of the things that strikes me the most is that as we develop the evidentiary record in the case, the facts alleged in the complaint became well supplemented to state a claim against both the summary judgment defendant and the municipal defendants under 42 U.S.C. 1983, section 1983. The admission that came through the evidentiary record in the form of a text message that the summary judgment defendant sent to the appellant's colleague saying, well, I've got to do something because now she's calling me a racist, evidences the retaliation for my client calling out the appellee for discriminatory animus toward her. As a reason, as one of the reasons for obtaining the restraining order in Massachusetts, an act in which not only was it well known to the district court that the appellee was a police officer and that his workplace, as evidenced in the transcript, was the Revere Police Department, but also the fact that it really was underpinned by the false claim that there had been travel to Massachusetts that never occurred by the appellant, that didn't occur when he said it occurred by the appellant. And that was in response to a question from the restraining order judge essentially saying, what's the emergency here? When was the last time she was here? In fact, the last time she was there was more than eight months before. If the court had known that, the court would have been highly unlikely to have entered a restraining order under these circumstances, under Massachusetts law, where there was no imminent threat of physical harm established, which is required under Chapter 209A. Further, the evidentiary record developed, again, despite the recalcitrance of the appellee in responding to discovery, to demonstrate that not only had he sent a lengthy email directly to my client's colleagues to my client's workplace and called them as he admitted, as we knew and averred in the complaint, but also that he used the resources of the municipal defendants to go into the evidence room to using police procedures, put together an evidentiary package, a heavily edited evidentiary package. Thank you, counsel. Excuse me. I appreciate this factual summary. Could you articulate for me, please, what is your constitutional claim? How would you articulate that if there's more than one? How do you articulate those claims, if you would, please? As to the summary judgment defendant, it has to do with conscience-shocking misconduct in the form of the dishonesty, the drafting of the police report, the use of police power to marginalize her to get an advantage or get retribution in a personal relationship. Had it not been for the use, the actions under color of law, then it would have simply been an ongoing dispute between two people that would have petered out. But instead, it caused her directly, because this package went directly to investigators, caused her to be subjected to a criminal probe lasting more than five months in which a search warrant was executed against her private interests. Counsel, the district court seemed to take, yes, Mr. Covino is a police officer, but the district court seemed to take the view that he was acting in a, and it's known that he's a police officer when he seeks the protection from abuse order, but the court seems to find that he was acting in a private capacity to protect himself from what he characterized as the stalking and harassing behavior. So if he's acting in a private capacity, how do you get to the substantive due process claim that you're making? Well, we've briefed, I think, in detail the reasons why the evidence establishes that he was acting in his official capacity, that it was clear that he was a police officer. But beyond that, we have the abusive process tort claim. We have the intentional infliction tort claim. We have the Massachusetts civil rights claim, which, of course, prevents private actors from interfering with the rights of individuals. The other thing I wanted to- What right was she interfered with? What was the right that was interfered with? I'm sorry? What was the right that was interfered with under the MCRA? The right to travel to Massachusetts. The right to- Was she prohibited from traveling to Massachusetts? She certainly was, sure. Why? Excuse me? Why? Because she was in fear of arrest. And also, Massachusetts has determined that just the entry of a restraining order is an interference with a whole panoply of due process interests. And beyond that, the deprivation, the interference with her property interests as a result of the seizures made by her employer and the fact that she was taken off the job, never to return, as a direct result of the summary judgment appellant's text messages, which he would not provide, his email, his efforts, the police report he drafted, all of which he provided to the employer, the police report and this carefully curated evidence package that was sent by his friend on the police department directly to state police investigators in Virginia were efforts to get her charged with a crime. Those were the due process interests that were interfered with. They were property and liberty interests. Counsel, the district court seemed to- Yes, in filing the, I guess, internal complaint with Massachusetts authorities in reaching out to the authorities in the home state of your client, there was a suggestion that Mr. Covino was sort of relying on his status as a policeman, reaching out to other police authorities. But there was then an independent investigation by those local authorities, which then led to the discipline. I understand the district court to be saying that that independent investigation breaks any causal connection between what Mr. Covino might have done in an official capacity. He did not control the investigation that was done locally. They had a history with your client. They factored all of that into the decision that was made. That was an independent event, which would not constitute a constitutional violation. What's your response to that? Were that true, the trajectory of discipline would have gone much differently, and we know this because the appellant had a lengthy career on the police department in that time with commendations as well as some discipline in her record, but there was no hint of any investigation of any disciplinary activity. She was out on medical leave. There was no hint of any sanction against her by her employer until the overwrought and overreaching actions by Mr. Covino. Again, using the... That doesn't align, at least how I understood the record, because it seemed like when the George Mason police got the complaint from Mr. Covino, they were like, yeah, we know all about this. Can you sort of do some things that will help us move our investigation along? So it seems like the real moving force behind this idea to start really looking closely at your client was more George Mason's than it was Covino. Covino got instructions from them and then did certain things. The areas of the record that bring that very much into dispute are, again, the text messages exchanged with her colleague, also the failure and refusal when even questioned by the investigator about the restraining order. Is she obeying the restraining order? And this was in late March or May, weeks and weeks after the restraining order had been vacated, omitting, failing to indicate that the restraining order had been vacated and instead just saying, no, she's been complying with the restraining order. There were repeated conversations. Had it not been for this evidentiary package, it was the evidentiary package that was provided by the appellee as well as his false claims that she was going up to Massachusetts as recently as December or January to harass him that really animated this investigation. Not George Mason at all. In fact, the basis of the search warrant targeting my client was that she's been going up to Massachusetts, this fictional trip to Massachusetts that had never occurred. Thank you, counsel. I won't be asking for a rebuttal. I do believe that the record is sufficient. Thank you. You missed the rebuttal opportunity, so you got your full time. Thank you. At this time, would Mr. Anderson please introduce himself for the record? May it please the Court, I'm Kenneth Anderson for Joseph Covino. I have seven minutes' time, and I don't intend to use all that time before the Court, but I would just suggest some of the hyperbole that you've heard from my sister here is consistent with what we've been dealing with through this entire complaint where my client was forced to go through a long Well, let's focus. You have limited time. Let's focus on the things she said. So one of the main things I took from her presentation was your client used his police authority to gather up documents, create a package that was very disfavorable to her, and used his police authority to send that to George Mason and that that was a violation of her constitutional rights, and he did that under the color of law because he was doing that as both the complainant, the supervising police officer, and the reporting police officer. What's your response to that? Well, Your Honor, first, in terms of obtaining the restraining order, my client went to the witness I didn't ask about that. I asked about the package. The police report sent down to George Mason. That was a to-from report that he wrote that remained in the Revere computer system. It was not used for any Massachusetts law enforcement purpose whatsoever. Maybe it was improper for him to be the victim and the approving sergeant, but he did that report as a request of Lieutenant Gangley who had sent an email or text message to him saying, hey, my chief has asked if you could put a report. I know it's a big ask. Can you do a report with your local station? He did this here. It was never used at all for any matter. But he did it, and he's doing it as a police officer, right?  And so that would seem to at least meet the under color of law part of things. But then it's sent to Virginia where he has no lawful authority at all. This is as if he had just written it on the back of an envelope or something and had sent it down there. It has no law enforcement characteristics down in Virginia. And when this happened and when the restraining order was written, remember this incident, there was a meeting with Chief Rowan and the command staff from the- That seems like a stretch. If I'm a police officer and I make up a false police report that says there was a crime committed and I send that to another place to try to create action, and I'm doing that falsely and lying about it, haven't I done that as a police officer? Even though they're going to make the decision, but I put that whole thing in motion through my lying. Well, there's not a shred of evidence to begin with, and I think that report was false. But, again, this was several days after Chief Rowan had met with his command staff and the Virginia State Police, and specifically they all said, we believe this officer's manic in her relationships. The chief specifically said, I want this investigation. I'm the one that's asking for it. My client never asked for any criminal investigation, either in Virginia or in Massachusetts. And Chief Rowan pointedly said, and it's right in the record, that Sharon Radford does not need to be a police officer. He had seen some disturbing behavior from her before. Lieutenant Gannon- Why can't they both be defendants? Why can't the Virginia people be responsible? And then Covino, to the extent he's going to help them out by doing stuff using his police authorities to make their job easier, why are we drawing a line between them such that only the Virginia people can be responsible? I would just say the only thing that makes that a police document is that it's written on a police computer. But it was his statement as a private citizen about the plaintiff's actions towards him. The record, it's extremely clear, the harassment, the abuse he went through. It's well laid out in the appendix. If you look at my brief page, it's 16 to 18. It outlines all the different phone numbers that she would call from restricted numbers. And again, her lack of candor with counsel in the court, when she was asked why did you leave your position with the George Mason police, she said they never told me. She never told us that she had three fitness for duty evaluations and that she had failed two of those three fitness for duty evaluations. She never told us that another officer who she started dating 11 months after Covino also got a restraining order against her that was actually extended for a full year. And she sued him in the same district court- What she put forward as the lead claim, which is that they do process violation, came because it was shocking conscience to write a police report that you said, I am both the victim, the officer, and the supervisor, in which I made, she says, false statements. And the purpose of that was to get retribution on her from her employer, even though they may be in cahoots with it, in Virginia. That's the guts of the claim. What is the legal flaw in it? Because I don't think that that would be police action, sending it into Virginia for a Massachusetts officer. If they were to conduct a verbal phone interview or a Zoom interview with him two days later and ask him to recite those same facts, he would be reciting those facts as a civilian, stating this is what happened to me. I got these phone calls. She came to my house. She threatened to come to my house and make a scene. She went to my police station. She threatened that she was down the street. Those are all civilian acts. Yes, he put it in a Revere police report, but that report was not, again, used for any Massachusetts law enforcement purpose, and he has no legal jurisdiction in Virginia. Unless the court has any further questions, I would rest at this point and just ask you to consider my motion for sanctions. Thank you, counsel. At this time, would counsel for the city of Revere introduce himself on the record? Good morning. If it pleases the court, my name is Daniel Dougherty. I represent the city of Revere, former mayor Brian Arrigo, and former chief of police James Guido. I understand that the analysis is different on the motion to dismiss, but let me just pick up on the discussion with my co-counsel here. First of all, Sharon Radford absolutely committed the crime of criminal harassment. There's no question about that. There was some dispute about that at the hearing last November on Colvino's motion for summary judgment, and the judge, Talwani, says, well, I'm going to look into it. Well, she didn't even look any further than the case of ASR against AKA, 92 Massapella Court, 2017, on very, very similar facts, even right down to where the woman harassing the former boyfriend disguised her in number so that he'd have difficulty blocking her calls, and there's a very deep analysis. They do a deep dive in that case. Radford absolutely committed that crime. So plaintiff's counsel is that he was on this campaign to ruin her life and was making up false accusations. That's just all completely false. And then getting back to the – and Judge Talwani, when she was looking at the complaint, she's entitled to apply her common sense and judicial experience and context-specific analysis of the complaint. And when you take away the wild accusations, wild conclusions of law, and just made-up facts, when you take those away, there was no basis for any of the – of the motion to dismiss. Counsel's waived. She hasn't developed any argument on any of the other claims other than the equal protection, the civil rights, the equal protection argument. What do you understand to be the motive? Failure to train. The theory against your clients is a failure to supervise or a failure to train him? Is that the idea? Yes, that's my understanding of that. There's a failure to supervise, failure to train. And first of all, his conduct is alleged to be intentional, and I know there's language in the Harry Connick case there, the lead Supreme Court case, that there's a question about whether the failure to train would be a causal relation. In essence, it was intentional conduct. But what kind of training would a municipality give somebody to try to treat – as to how they should behave in some future time in their entirely private life, they get harassed by someone, or how they should conduct themselves? Thank you, Counsel. Okay. Thank you for your consideration. Thank you, Counsel. That concludes argument in this case.